**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                                          No. CR 07-2532 LH

ADAM MADRID,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant Adam Madrid's Motion to Dismiss the Indictment (Doc. 25, filed Aug. 4, 2008). The Court, having reviewed the motion, the briefs, and the relevant law, finds the motion is without merit and will be denied.

**I.     BACKGROUND**

A federal grand jury indicted Defendant Madrid with possession of a firearm and ammunition by a person previously convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(2). (Doc. 2). Section 922(g)(9) makes it unlawful for any person who has been convicted in any court of a misdemeanor crime of domestic violence to possess any firearm or ammunition in or affecting commerce. 18 U.S.C. § 922(g)(9). The term "misdemeanor crime of domestic violence" is defined as an offense that "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by" a current or former spouse, parent, or other specifically defined intimates of the victim. *Id.* § 921(33)(A)(ii). The Government alleges that Defendant, having been convicted of the crime of battery on a household member in New Mexico, knowingly possessed a .45 caliber pistol, a .22

caliber rifle, and assorted ammunition. (Doc. 2).

Defendant filed a motion to dismiss the indictment based on the Supreme Court's recent decision in *District of Columbia v. Heller*, 128 S.Ct. 2783 (2008). Defendant argues that the Supreme Court in *Heller* recognized an individual's right to keep and bear arms and that 18 U.S.C. § 922(g)(9) violates that right by forever prohibiting Defendant from owning or possessing any firearm for any purpose whatsoever. He asserts that his five-year-old misdemeanor conviction does not justify the permanent abrogation of his right to bear arms where the prior conviction had nothing to do with firearms and resulted in him serving only 10 days in jail. Defendant contends that the government's interests in the statute do not pass the strict scrutiny test. He therefore argues that, as applied, § 922(g)(9) violates his Second Amendment right to possess a firearm.

The United States contends that *Heller* does not render § 922(g)(9) unconstitutional because this statute, unlike those considered in *Heller*, does not categorically deny all persons their Second Amendment right to bear arms; instead, § 922(g)(9) prohibits firearm possession by persons who have forfeited their rights through the commission of serious criminal conduct. The Government argues that this statute provides a reasonable, narrowly-tailored restriction on an individual's right to possess firearms that falls within the ambit of presumptively lawful regulatory measures recognized in *Heller*.

**II.   ANALYSIS**

    **A.   Section 922(g)(9) was constitutional pre-*Heller***

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. Prior to *Heller*, the Supreme Court's jurisprudence on the scope of the Second Amendment was quite limited. *Gillespie v. City of Indianapolis*, 185 F.3d 693, 710 (7th Cir. 1999).

Despite the Supreme Court's reticence on the issue of whether the Second Amendment created an individual or collective right to keep and bear arms, numerous courts had upheld the constitutionality of § 922(g)(9) in the face of Second Amendment challenges.  *See*, *e.g.*, *United States v. Pfeifer*, 371 F.3d 430, 438 (8th Cir. 2004); *United States v. Woods*, 37 Fed.Appx. 712, *1 (5th Cir. May 21, 2002); *United States v. Finnell*, 27 Fed.Appx. 166, *1 (4th Cir. Nov. 19, 2001); *United States v. Hancock*, 231 F.3d 557, 565-66 (9th Cir. 2000); *Gillespie*, 185 F.3d at 710-12.  The majority of the circuits upheld § 922(g)(9), not based on a recognition of an individual right to keep and bear arms, but rather, based on *United States v. Miller*, 307 U.S. 174 (1939), which they construed as holding that the Second Amendment establishes no right to possess a firearm unless its possession is reasonably related to the maintenance of a state militia.  *See*, *e.g.*, *Pfeifer*; 371 F.3d at 438; *Gillespie*, 185 F.3d at 710-12.  *But see United States v. Emerson*, 270 F.3d 203, 260 (5th Cir. 2001) (recognizing individual right to bear arms).  These circuits concluded that § 922(g)(9) was constitutional because its prohibition did not undermine the viability and efficacy of state militias.  *See*, *e.g.*, *Pfeifer*; 371 F.3d at 438; *Gillespie*, 185 F.3d at 710-12.  *See also Hancock*, 231 F.3d at 565-66 (explaining that § 922(g)(9) does not violate Second Amendment because Second Amendment is a right held by states and does not protect possession of weapon by private citizen).

The Tenth Circuit, although not ruling on § 922(g)(9) specifically, applied similar reasoning as the majority of circuits in holding that "a federal criminal gun-control law does not violate the Second Amendment unless it impairs the state's ability to maintain a well-regulated militia." *United States v. Haney*, 264 F.3d 1161, 1165 (10th Cir. 2001) (holding that § 922(o) did not violate Second Amendment).  The Tenth Circuit decisions upholding other provisions of 18 U.S.C. § 922 indicate that it, too, did not view § 922(g)(9) as violating the Second Amendment.  *See*, *e.g.*, *United States v. Bayles*, 310 F.3d 1302, 1307 (10th Cir. 2002) (upholding § 922(g)(8) against Second Amendment

challenge because defendant failed to show that he was part of well-regulated state militia, that guns were used by that militia, and that possession of guns was reasonably connected to militia service); *United States v. Baer*, 235 F.3d 561, 564 (10th Cir. 2000) (upholding § 922(g)(1) against Second Amendment challenge because there was no evidence that statute affected maintenance of well-regulated militia).

### B.      Section 922(g)(9) remains constitutional after *Heller*

In 2008, the Supreme Court in *Heller* answered affirmatively the question of whether the Second Amendment creates an individual right to keep and bear arms, separate and apart from a right to use arms in an organized militia. *Heller*, 128 S.Ct. at 2799. In recognizing that the individual right to keep and bear arms is enshrined in the Constitution, the Supreme Court took care to explain that this individual right is not without limits:

> There seems to us no doubt, on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms. Of course the right was not unlimited, just as the First Amendment's right of free speech was not. Thus, we do not read the Second Amendment to protect the right of citizens to carry arms for *any sort* of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak for *any purpose*.

*Id.* (internal citation omitted). Later in the opinion, the Court further explained the bounded nature of the right:

> Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, *nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill*, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id.* at 2816-17 (internal citations omitted) (emphasis added). The Court noted that the "presumptively lawful regulatory measures" it had identified were only examples, not an exhaustive list. *Id.* at 2817 n.26. The Supreme Court also explained another limitation of the right to keep and carry arms: the types of weapons protected are those in common use at the time, not dangerous and unusual weapons. *Id.* (relying on *Miller*, 307 U.S. at 179).

The Supreme Court then examined the constitutionality of the District of Columbia statutes challenged by respondent, which totally prohibited the possession of handguns in the home and required residents to keep other lawfully owned firearms unloaded and dissembled or bound by a trigger lock at all times, rendering them inoperable. *Id.* at 2788, 2817. The Court determined that the "severe" handgun ban that extended to the home was unconstitutional "[u]nder any of the standards of scrutiny that we have applied to enumerated constitutional rights," because it is the overwhelmingly preferred firearm in the nation to keep and use for the protection of self, family, and property. *Id.* at 2817-18. The Supreme Court similarly held that the requirement that firearms in the home be kept inoperable at all times was unconstitutional because it made it impossible for citizens to use them "for the core lawful purpose of self-defense." *Id.* at 2818.

Despite recognizing an individual right to keep and bear arms, nothing in the *Heller* opinion casts doubt on the constitutionality of § 922(g)(9). *Heller* emphasizes that the individual right to keep and bear arms is limited to persons who have not been convicted of violent crimes: "And whatever else it leaves to future evaluation, it surely elevates above all other interests the right of *law-abiding, responsible* citizens to use arms in defense of hearth and home." *Id.* at 2821 (emphasis added). Moreover, while admittedly dicta, the Supreme Court's admonition that nothing in its opinion should cast doubt on the "longstanding prohibitions on the possession of firearms by felons and the mentally ill," found in § 922(g)(1) and § 922(g)(4), respectively, which are "presumptively

lawful regulatory measures," *Heller*, 128 S.Ct. at 2816-17 & n.26, strongly suggests that § 922(g)(9) is likewise a presumptively lawful regulatory measure. Courts have since construed this dicta as determinative that the Second Amendment does not prevent Congress from prohibiting persons convicted of a felony from possessing firearms. *See*, *e.g.*, *United States v. Brunson*, 2008 WL 4180057, *1 (4th Cir. Sept. 11, 2008) (rejecting defendant's Second Amendment challenge to 18 U.S.C. § 922(g)(1) based on *Heller*); *United States v. Gilbert*, 2008 WL 2740453, *2 (9th Cir. July 15, 2008) ("Under *Heller*, . . . convicted felons . . . do not have the right to possess any firearms."); *Doshier v. Roy*, 2008 WL 4148251, *1 (E.D. Tex. Aug. 29, 2008); *United States v. Robinson*, 2008 WL 2937742 (E.D. Wis. July 23, 2008). At least two district courts have similarly upheld § 922(g)(9) based on the *Heller* dicta. *United States v. Booker*, __ F.Supp.2d __, 2008 WL 3411793, *3 (D.Me. 2008) ("Based on the absence of a meaningful distinction between felons and persons convicted of crimes of domestic violence as predictors of firearm violence, the critical nature of the governmental interest, and the definitional tailoring of the statute, the Court concludes that persons who have been convicted of a misdemeanor crime of domestic violence must be added to the list of 'felons and the mentally ill' against whom the 'longstanding prohibitions on the possession of firearms' survive Second Amendment scrutiny.'"); *United States v. White*, 2008 WL 3211298 (S.D. Ala. Aug. 6, 2008) ("[T]he Court will take *Heller* at its word . . . that it did not cast doubt on the validity of prohibitions such as those found at § 922(g).").

  Defendant nonetheless argues that *Heller* mandates application of the strict scrutiny test and that the governmental interests in § 922(g)(9)'s prohibitions are not compelling enough to overcome its unreasonable restrictions on his firearm possession. Contrary to Defendant's argument, the Supreme Court in *Heller* did not enunciate with specificity the standard of review to be applied to statutes infringing on Second Amendment rights. *See Heller*, 128 S.Ct. at 2821. It did, however,

reject two potential tests – rational basis review and an "interest-balancing" approach. *See id.* at 2817 n.27 & 2821. Citing *United States v. Carolene Products Co.*, 304 U.S. 144, 152 n.4 (1938), the Court stated that rational-basis scrutiny "could not be used to evaluate the extent to which a legislature may regulate a specific, enumerated right, be it the freedom of speech, the guarantee against double jeopardy, the right to counsel, or the right to keep and bear arms." *Heller*, 128 S.Ct. at 2817 n.27. Additionally, in addressing Justice Breyer's criticism of the majority's failure to establish the level of scrutiny, the majority rejected Justice Breyer's "interest-balancing" approach:

> We would not apply an "interest-balancing" approach to the prohibition of a peaceful neo-Nazi march through Skokie. *See National Socialist Party of America v. Skokie*, 432 U.S. 43, 97 S.Ct. 2205, 53 L.Ed.2d 96 (1977) (*per curiam*). The First Amendment contains the freedom-of-speech guarantee that the people ratified, which included exceptions for obscenity, libel, and disclosure of state secrets, but not for the expression of extremely unpopular and wrong-headed views. The Second Amendment is no different. Like the First, it is the very *product* of an interest-balancing by the people – which Justice Breyer would now conduct for them anew. And whatever else it leaves to future evaluation, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home.

*Id.* at 2821. Consequently, in the wake of *Heller*, although it appears that some form of heightened review is required, it remains unclear exactly what that test is. This Court, however, need not resolve that complex issue here, because the Court finds that § 922(g)(9) passes constitutional muster even using the strict scrutiny test.

Statutes subject to strict scrutiny are constitutional only if they are "narrowly tailored to serve a compelling state interest." *Washington State Grange v. Washington State Republican Party*, 128 S.Ct. 1184, 1191 (2008). That compelling interest is present here. "The legislative history of the gun control laws discloses Congress' worry about the easy availability of firearms, especially to those persons who pose a threat to community peace. And Congress focused on the nexus between violent crime and the possession of a firearm by any person with a criminal record." *Lewis*

*v. United States*, 445 U.S. 55, 66 (1980).  Protecting the public, and specifically the victims of domestic violence, from further violent acts by dangerous persons is a compelling governmental interest.  *Gillespie v. City of Indianapolis*, 13 F.Supp.2d 811, 827 (S.D. Ind. 1998) (holding that § 922(g)(9) survived strict scrutiny because "law is narrowly tailored to serve Congress' compelling governmental interest in keeping deadly firearms away from persons reasonably adjudged by Congress to be dangerous or irresponsible, as well as preventing victims of domestic violence from being killed by their attackers with a firearm"), *aff'd on other grounds by* 185 F.3d 693.

The statute is also narrowly tailored in that it applies to those who have been *convicted* of a misdemeanor crime of domestic violence that has as an element the "use or attempted use of physical force, or the threatened use of a deadly weapon," *see* 18 U.S.C. § 921(33)(A)(ii).  Section 922(g)(9) thus targets only those persons who have been found in a court of law to have committed an act of violence against a spouse or other intimate.  As the *Booker* court stated, "as a predictor of firearm misuse, the definitional net cast by § 922(g)(9) is tighter than the net cast by § 922(g)(1)." __ F.Supp.2d __, 2008 WL 3411793 at *3.  *See also Gillespie*, 13 F.Supp.2d at 827 (holding that § 922(g)(9) is narrowly tailored in that it applies to persons who had been convicted in court of law of domestic violence and Congress cited many statistics linking presence of firearms to substantial number of deaths resulting from domestic violence disputes).

As applied here, Defendant's prior conviction was a State of New Mexico conviction for battery on a household member.  New Mexico's Battery on a Household Member statute criminalizes "the unlawful, intentional touching or application of force to the person of a household member, when done in a rude, insolent or angry manner."  N.M. Stat. Ann. § 30-3-15(A).  The statute thus targets physical violence against a household member, conduct that Congress determined was a predictor of firearm misuse.  The fact that Defendant kept the firearms in the

home, rather than carrying them in public, does not mitigate the risk. As to persons convicted of domestic violence offenses, Congress was specifically concerned about the risk of violence that could occur to victims living in that home, not merely to the public at large. That the underlying conviction was five years ago is also not so far in the distant past to obviate Congress' legitimate and compelling concern to keep firearms out of the hands of persons who have been found in a court of law to have acted in a violent manner. Accordingly, § 922(g)(9), as applied in this case, does not violate the Second Amendment. *See Emerson*, 270 F.3d at 264 (upholding 18 U.S.C. § 922(g)(8), even though Second Amendment created individual right to keep and bear arms, because nexus between firearm possession by person subject to domestic violence restraining order and threat of lawless violence supported restriction); *Woods*, 37 Fed.Appx. 712 at *1 (relying on *Emerson* in upholding constitutionality of § 922(g)(9), because "[i]f the statute is constitutional when applied to someone who has been ordered not to use force against his wife, it is certainly constitutional when applied to a person who has already been convicted of using such force"). *See also Lewis*, 445 U.S. at 66 ("The Court has recognized repeatedly that a legislature constitutionally may prohibit a convicted felon from engaging in activities far more fundamental than the possession of a firearm.") (citing *Richardson v. Ramirez*, 418 U.S. 24 (1974) (disenfranchisement); *De Veau v. Braisted*, 363 U.S. 144 (1960) (proscription against holding office in waterfront labor organization); *Hawker v. New York*, 170 U.S. 189 (1898) (prohibition against practice of medicine)); Don B. Kates, Jr., Handgun Prohibition and the Original Meaning of the Second Amendment, 82 Mich. L. Rev. 204, 266 (1983) ("Nor does it seem that the Founders considered felons within the common law right to arms or intended to confer any such right upon them. All the ratifying convention proposals which most explicitly detailed the recommended right-to-arms amendment excluded criminals and the violent.").

**IT IS THEREFORE ORDERED** that Defendant Adam Madrid's Motion to Dismiss the Indictment (Doc. 25) is **DENIED**.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**